# Gauthier Murphy & Houghtaling LLC
ATTORNEYS AT LAW

3500 North Hullen Street	Telephone: (504) 456-8600
Metairie, Louisiana 70002	Facsimile (504) 456-8624
	www.gmhatlaw.com

November 24, 2020

*Via Email to:*
*alliedclaims@transcynd.com*
Allied Trust Insurance Company
215 South Complex Dr.
Kalispell, MT 59901

|  |  |  |
|---|---|---|
| Re: | Named Insured: | Wallace Myers |
|  | Insurer: | Allied Trust Insurance Company |
|  | Policy No.: | 833646 |
|  | Laura Claim No.: | 2015709 |
|  | Date of Loss: | August 27, 2020 and October 9, 2020 |
|  | Loss Location: | 2884 Muirfield Dr., Lake Charles, LA |

Dear Sir/Madam:

Gauthier Murphy & Houghtaling LLC has been retained to represent Wallace Myers in the claims handling process for their loss resulting from Hurricanes Laura and Delta. The following is our evaluation of this claim as it pertains to property loss and property loss related damages, serving as a formal proof of loss that is to be entered into the claims file of Allied Trust policy number 833646.[1]

**1.	Wallace Myers insured his property for up to a total of $425,600.**

Mr. Wallace Myers' family residence is a two-story home.  Because the Louisiana gulf-coast is exposed to hurricanes, Wallace Myers sought insurance to protect his property and business. Through various agents of Allied Trust Insurance Company ("Allied Trust"), Bice Insurance LLC, Allied Trust offered to sell a policy of insurance to Wallace Myers. After careful consideration, Wallace Myers agreed to purchase insurance from Allied Trust, coverage effective from May 1, 2020 through May 1, 2021.[2] The policy purchased included coverage of real property up to $280,000, personal property up to $112,000, and loss of use.

Wallace Myers entered into this contract of insurance with the reasonable expectation that Allied Trust would abide by the terms of its policy and pay losses without delay. Both parties understood that a delay in payment of the policy of insurance, particularly in the aftermath of a catastrophic event, would cause severe setbacks and security conditions to the property. Allied Trust was entrusted and paid to cover Wallace Myers' property.

---

[1] This document is not to be confused as a settlement demand. It is not confidential. In the event the parties cannot come to an agreement on the loss and this summary of the proof of loss of the claim is not paid, insured intends to use this document to demonstrate insurers knowledge of the claim and their conduct thereto.
[2] *See* Policy Number 833646 attached as Exhibit 1.

EXHIBIT B

November 24, 2020
Page 2

**2. Hurricane Laura destroyed Louisiana's western coast, including Lake Charles.**

Hurricane Laura made a catastrophic landfall on August 27, 2020 near Cameron, Louisiana as a Category 4 hurricane around 1:00 a.m. with sustained winds of 150 mph.[3] Lake Charles, a mere 30 miles north of Cameron, experienced devastating winds, wind-driven rain, and a life-threatening storm surge for several hours as the hurricane passed directly over the city.[4] This resulted in extensive damage to Lake Charles, including shredding the power grid and thousands of structures. One of these thousands of structures severely damaged was Mr. Myers' property.



---

[3] *See* Jason Hanna, Madeline Holcombe, and Theresa Waldrop, *Hurricane Laura smashes parts of Louisiana and Texas, killing 6 and leaving widespread wind damage*, CNN, August 27, 2020, https://www.cnn.com/2020/08/27/weather/laura-gulf-coast-weather-forecast-thursday/index.html.

[4] *See* Meteorologists, *Hurricane Laura Moving Inland as an Extremely Dangerous Category 4 Storm Near Lake Charles, Louisiana*, The Weather Channel, August 27, 2020, https://weather.com/storms/hurricane/news/2020-08-26-hurricane-laura-forecast-rapid-intensification-texas-louisiana.

November 24, 2020
Page 3

### 3. Weeks Later Hurricane Delta further destroyed Louisiana's Western Coast, including Lake Charles

Then Hurricane Delta made a catastrophic landfall on October 9, 2020 near Creole, Louisiana as a Category 2 hurricane around 6:00 p.m. with sustained winds of 100 mph.[5] Lake Charles, a mere 40 miles west of Creole, experienced devastating winds, wind-driven rain, and a life-threatening storm surge for several hours as the hurricane passed directly over the city.[6] This resulted in extensive damage to Lake Charles, including shredding the power grid and thousands of structures. One of these thousands of structures further damaged was the Myers' family residence in Lake Charles, Louisiana – Calcasieu Parish.



### 4. Wallace Myers has a contractor's bid from a licensed in Louisiana contractor.

Wallace Myers is unable to use the property and needs to complete repairs as soon as possible. Wallace Myers has a contractor's bid from a licensed Louisiana Contractor. While the carrier can guess the cost, Wallace Myers has retained a contractor and the contractor is ready to start the job today. We have advised Wallace Myers that the carrier has time in Louisiana to investigate and research costs. In investigating repair costs and available contractors in Lake Charles, it's clear that it is been difficult to find a licensed contractor that is not at complete capacity. Contracting services are scarce and the prices for labor and materials has increased substantially. Further, the workers must have the expertise to work in an area with limited resources and electricity. The insurer was fortunate to have found a quality contractor that can begin work immediately. The contractor has done an extensive investigation of the property.

---

[5] *See* https://www.npr.org/2020/10/09/922148939/hurricane-deltas-winds-hit-120-mph-as-storm-approaches-louisiana-coast.
[6] *See* Meteorologists, *Delta Pushes Inland with Wind and Flood Threat*, The Weather Channel, October 10, 2020, https://weather.com/storms/hurricane/video/delta-pushes-inland-with-wind-and-flood-threat.

November 24, 2020
Page 4

We understand that the carrier has likely hired a third-party administration company and outsourced the estimating of property to third party estimators who are doing cursory walk throughs, calling in claim reserves and then using Xactimate pricing to estimate what a contractor in the area will charge. It is also my understanding that carriers may require that bids and estimates be translated into Xactimate. To ease the process, we have asked Mr. Myers' contractor to provide a bid in an Xactimate format. We also asked our contractor to give us a Fixed Price, where the bid guarantees the price on the scope of work, rather than a cost-plus bid. While a guaranteed bid might seem higher than a cost plus estimate, we firmly believe that with the high risk of unexpected costs of labor and materials it is better to shift the risk of labor and materials to the contractor, and by doing so, the ultimate cost is a known entity and likely cheaper than a cost plus contract. Therefore, Crest Exteriors, LLC has provided their estimate, demonstrating the actual costs to repair the insured premises. For your convenience, Crest Exteriors, LLC has provided their estimate in the insurance industry Xactimate format for the loss evaluation. Crest Exteriors, LLC's bid is provided as a lump sum market-rate estimate that guarantees the price on the given scope. While the damage sustained was severe, we believe this repair estimate is reasonable and reflects an amount that a licensed and bonded contractor would charge for the necessary scope of repair in this market at this time.

We caution the carrier that any delay will cause a serious setback and runs the risk of losing the ability to repair the property timely.

**5.     COVID 19's Impact on Prices & Productivity.**

As detailed in a white paper by Insurance Industry friendly, JS HELD, the COVID-19 pandemic has forced contractors around the globe to alter many standard procedures and this has resulted in losses in productivity. Recent studies have quantified COVID-19's impacts on construction productivity and equitable adjustments to pricing must be addressed.[7]

**6.     Market Price Increases Outside Xactimate:**

The estimate is not just detailed to scope, it is accurate to real market price. During a "CAT" storm, the Xactware®, the makers of Xactimate, freezes the pricing in Xactimate for a period of approximately 30 days. This freeze allows Xactware® to properly reassess the market pricing, which they claim they stay current with. As referenced below, Xactware® issued freeze notices prior to Hurricane Laura, Hurricane Delta, and Hurricane Zeta.

---

[7] https://jsheld.com/university/articles/empirical-productivity-impacts-of-the-novel-coronavirus?token=702



Any estimates written in Xactimate during the time when a pricing freeze is in effect, which in the 2020 Hurricane season could be as long as 90 days, would be incorrect. Xactware®'s own pricing news, highlights this issue, showing significant overall increases year to date, and extreme spikes in costs August 2020-forward.[8] Adjustors may not be aware of these changes because they are generally using a licensed/enterprise version of Xactimate that are issued through the company they work and thus will not receive "noreplay@" notices from Xactware.



To correctly price in Xactimate during a freeze requires manually overriding the current auto pricing. This is best accomplished by making a duplicate pricing list, entering the "factoring" function" within "global changes" and increasing the percentage. Based on current market conditions, the percentage increase should be in the range of 20%-30%.

---

[8] https://www.xactware.com/en-us/resources/pricing-data-services/pricing-news/

November 24, 2020
Page 6

7. **Covered losses and repair costs.**

The hurricane causes severe damage at the insured premises. The insured premises experienced major structural damage resulting from atmospheric pressure and wind produced by Hurricanes Laura and Delta. The interior damage, was thoroughly documented using a cutting edge 3D camera system known as Matterport.[9] A fully immersive 3D tour of the interior damage is located here: https://my.matterport.com/show/?m=NgbK5LdMSDL&brand=0.

Below is a breakdown of the damages and estimated repair cost[10]:

a. Property Loss:

1. Dwelling                $299,998.63

2. Cleaning Contents       $     62.12

   TOTAL AMOUNT OF LOSS             $300,060.75

8. **Statutory deadline: December 24, 2020**

Wallace Myers would like to move ahead with repairs and return to their pre-loss condition. The total benefits of $300,060.75 are necessary to satisfy obligations under the policy. Wallace Myers needs to move ahead with a contract with a contractor. Wallace Myers can only provide Allied Trust the maximum time given to any insurer in Louisiana, which is 30 days from receiving this satisfactory proof of loss. *See* Sections 1892 and 1973 of Title 22 of the Louisiana Revised Statutes.[11] We ask that Allied Trust, at a minimum, comply with this deadline, which under the Statute is December 24, 2020.[12]

Under the statute, Allied Trust is deemed to have a satisfactory proof of loss once Allied Trust has sent an adjuster to inspect the property, for at this point the insurer has sufficient information to act on the claim. *See J.R.A. Inc. v. Essex Ins. Co.*, 2010-0797, pp. 32-33 (La. App. 4 Cir. 5/27/11); 72 So. 3d 862, 881 (citing *Paul v. Nat. Am. Ins. Co.,* 361 So. 2d 1281, 1285 (La. App. 1 Cir. 1978).[13] The statutory timeline runs from the initial inspection and not from any final report by the insurer. *See Aghighi v. La. Citizens Prop. Ins. Corp.,* 2012-1096, pp. 5-6 (La.

---

[9] Matterport is has been come the gold standard in the 3D industry. It camera outputs at 134 megapixels, has eight additional sensors to collect measurements (information such as room height, object surface area, and the distance of objects in the room from each other) and produces 3D scans that are dimensionally accurate within 1 percent.
[10] *See* Estimate attached as Exhibit 2.
[11] *See* LA. STAT. ANN. §22:1892 and LA. STAT. ANN. § 22:1973 attached as Exhibit 3.
[12] Wallace Myers is complying with strict deadlines under the policy and the law and require Allied Trust to do so as well. Allied Trust's failure to comply with Section 1892 provides for the recovery of attorney's fees and a fifty percent penalty provision. See LA. STAT. ANN. § 22:1893.
[13] *See* J.R.A. Inc. v. Essex Ins. Co., 2010-0797, pp. 32-33 (La. App. 4 Cir. 5/27/11); 72 So. 3d 862 attached as Exhibit 4.

November 24, 2020
Page 7

App. 4 Cir. 6/19/13); 119 So. 3d 930, 934.[14]  As September 15, 2020 was the date of inspection, we calculate October 15, 2020 was Allied Trust's statutory deadline.[15]

In conclusion, given the foregoing, **Wallace Myers submits this formal proof of loss of the loss evidenced for the undisputed amount of $300,060.75, to be received within the statutory deadline of December 24, 2020.** This proof of loss shall be made part of the claim file and is an ongoing notice to the carrier. Wallace Myers reminds Allied Trust that their duty to tender and provide claims handling in good faith is ongoing. While Wallace Myers's loss requires strict compliance by Allied Trust, we stand ready to work with Allied Trust to answer any questions Allied Trust may have. We believe the damage estimates are clear, but if there are any questions, we will make our consultants available before the payment deadline. We look forward to a positive resolution of this claim.

Wallace Myers reserves all rights to amend/supplement their Proof of Loss in any and all respects and to assert all claims covered under Allied Trust policy issued to Wallace Myers, including Coverages A, B, C, D, as well as loss of rental and fair rental value, and additional coverages.

With best regards, I remain

Sincerely,

*[signature]*

Karen H. Beyea-Schroeder
Gauthier Murphy & Houghtaling LLC
3500 North Hullen Street
Metairie, LA 70002
Telephone:  (832) 413-4413
Email:  karen@gmhatlaw.com

Enclosures

---

[14] *See Aghighi v. La. Citizens Prop. Ins. Corp.,* 2012-1096, pp. 5-6 (La. App. 4 Cir. 6/19/13); 119 So. 3d 930, 934 attached as Exhibit 5.

[15] The 30-day timeline runs from the inspection date, not receipt of the proof of loss form.  An insurance company cannot withhold payment because it has not received specific proof of loss forms; so long as it has enough information to act on the claim, the manner of notification is "immaterial."  *See* 88 La. Bag Co. v. Audubon Indem. Co., 2008-0453 (La. 12/2/08); 999 So.2d 1104, 1119 (quoting Sevier v. U.S. Fid. & Guar. Co., 497 So. 2d 1380, 1384 (La. 1986)) attached as Exhibit 6; see also WILLIAM SHELBY MCKENZIE & H. ALSTON JOHNSON III, INSURANCE LAW AND PRACTICE, 15 LOUISIANA CIVIL LAW TREATISE § 11:5 (4th ed. 2012) ("[T]his element does not impose a duty on the insured to complete the insurer's proof of claim form or to submit the claim in any formal style." Accordingly, we calculate the 30-days to make a tender to run from the date of Allied Trust's first inspection.